IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARY ANN FORQUER,

     Plaintiff,

v.                        CIVIL ACTION NO. 1:15CV57
                               (Judge Keeley)

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND §
1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

On April 1, 2015, the plaintiff, Mary Ann Forquer ("Forquer"),
filed a complaint seeking review of the adverse decision of the
defendant, Carolyn Colvin, Acting Commissioner of Social Security
("the Commissioner") (Dkt. No. 1). On July 13, 2016, the Honorable
Michael John Aloi, United States Magistrate Judge, issued a Report
and Recommendation ("R&R"), recommending that the Court deny
Forquer's motion for summary judgment, grant the Commissioner's
motion for summary judgment, and dismiss the case (Dkt. No. 17).
Forquer filed timely objections to the R&R (Dkt. No. 18).

For the reasons that follow, the Court **ADOPTS IN PART** and
**REJECTS IN PART** the R&R, **GRANTS IN PART** the Commissioner's motion
for summary judgment to dismiss Forquer's reopening and cognitive
brain disorder claims, **GRANTS IN PART** Forquer's motion for summary
judgment by **REVERSING** the Commissioner's decision under sentence

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

four of 42 U.S.C. § 405(g) and § 1383(c)(3), and **REMANDS** Forquer's

psychological opinion and credibility claims to the ALJ for further

proceedings.

## BACKGROUND

On December 28, 2011, Forquer filed an application for

supplemental security income and disability insurance benefits,

which the Commissioner denied (Dkt. No. 1 at 1). Administrative

Law Judge ("ALJ") Terrence Hugar held an administrative hearing on

October 29, 2013, following which he denied Forquer's claim on

January 9, 2014. Id.; Dkt. No. 9-2 at 34. Forquer appealed the

ALJ's decision to the Appeals Council, which declined to grant

review (Dkt. No. 1 at 2).

On April 1, 2015, Forquer filed suit in this Court, seeking

reversal of the Commissioner's decision. Id. The Court has

jurisdiction pursuant to 42 U.S.C. § 405(g) (2012) and 42 U.S.C. §

1383(c)(3) (2012). It incorporates by reference Magistrate Judge

Aloi's thorough recitation of the facts surrounding Forquer's claim

for disability insurance benefits (Dkt. No. 17 at 2-21).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

Forquer has argued that the Commissioner committed reversible error in four respects: (1) The ALJ failed to consider whether re-opening issues existed; (2) the ALJ discounted all of the psychological evidence, which left no evidence on which he could rely when making his decision; (3) the ALJ failed to discuss evidence that contradicted his opinion regarding Forquer's credibility; and (4) the ALJ erred by not recognizing Forquer's cognitive impairment to be "severe" (Dkt. No. 12 at 1).

In the R&R, Magistrate Judge Aloi concluded that Forquer's contentions lacked merit (Dkt. No. 17). First, he found that the ALJ did not err by failing to reopen Forquer's previously denied disability claim because he was not required to do so by the regulation. Id. at 26. Second, he found that substantial evidence supported the ALJ's decision to discredit the four psychological experts because the ALJ relied on medical records to support his opinion. Id. at 30. Third, he concluded that substantial evidence supported the ALJ's credibility decision. Id. at 36. Finally, he found that substantial evidence supported the ALJ's determination that Forquer's cognitive brain disorder was not a severe

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

_____

impairment.  <u>Id.</u> at 41.  In her objections to the R&R, Forquer

argued that the ALJ committed reversible error by discounting all

four psychological opinions, refusing to address evidence that is

contradictory to his credibility decision, and relying on evidence

to which he attributed little weight when determining whether

Forquer has a severe cognitive disorder (Dkt. No. 18).

<u>APPLICABLE LAW</u>

**I.    Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(C) (2012), this Court must

review <u>de novo</u> any portion of the magistrate judge's recommendation

to which objection is timely made.  As to those portions of a

recommendation to which no objection is made, a magistrate judge's

findings and recommendation will be upheld unless they are "clearly

erroneous."  <u>See</u> <u>Webb v. Califano</u>, 468 F. Supp. 825, 828 (E.D. Cal.

1979).  Because Forquer filed objections, this Court will review <u>de
novo</u> those portions of the R&R to which she has objected.

**II.   Judicial Review of an ALJ's Decision**

Judicial review of a final decision regarding disability

benefits is limited to determining whether the ALJ's findings are

4

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

supported by substantial evidence, and whether the ALJ applied the correct law. See 42 U.S.C. § 405(g); Stricker v. Colvin, No. 2:15CV15, 2016 WL 543216, at *1 (N.D.W. Va. Feb. 10, 2016) (Bailey, J.). The Court will uphold an ALJ's findings when supported by substantial evidence. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Sec'y of Labor v. Mut. Mining, Inc. 80 F.3d 110, 113, (4th Cir. 1996) (quoting Conolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)(internal quotation marks omitted)).

The issue is not whether a claimant is disabled, but whether the ALJ's finding of disabled or not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Mayer v. Astrue, 662 F.3d

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

700, 704 (4th Cir. 2011) (citing Craig v. Chater, 76 F.3d 585, 589
(4th Cir. 1996)).  It is the duty of the ALJ, and not of the Court,
to make findings of fact and to resolve disputed evidence.  King v.
Califano, 599 F.2d 597, 599 (4th Cir. 1979).  The Court does not
find facts or try the case de novo when reviewing an ALJ's
disability determination.  Id. at 599 (citing Vitek v. Finch, 438
F.2d 1157 (4th Cir. 1971)).

### III. Five-Step Evaluation Process

To be disabled under the Social Security Act, a claimant must meet
the following criteria:

> [The] individual . . . [must have a] physical or mental
> impairment or impairments . . . of such severity that he
> is not only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.
> . . . '[W]ork which exists in the national economy' means
> work which exists in significant numbers either in the
> region where such individual lives or in several regions
> of the country.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

42 U.S.C. § 423(d)(2)(A) (2012). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

[Before the fourth step, the [residual functional capacity, or RFC] of the claimant is evaluated "based on all the relevant medical and other evidence in your case record . . . ."]

(iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

20 C.F.R. § 404.1520 (2015); 20 C.F.R. § 416.920 (2012). In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. <u>Richardson v. Califano</u>, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant meets this burden, the burden of proof shifts to the Government at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. <u>Hicks v. Gardner</u>, 393 F.2d 299, 301 (4th Cir. 1968). If the ALJ determines that the claimant is either disabled or not disabled at any of the five steps, the process will not move forward. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

## <u>ANALYSIS</u>

### I.  Re-Opening

Forquer claims that the ALJ erred by failing to inquire as to whether he should reopen her previous applications for social security benefits (Dkt. No. 12 at 6). The R&R concluded that the ALJ acted within his discretion, and that the rule does not require reopening (Dkt. No. 17 at 25-26). Forquer did not object to this

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

conclusion (Dkt. No. 18).  After careful review, finding no clear
error, the Court **ADOPTS** the recommendation in the R&R as to
Forquer's re-opening claim, **GRANTS** the Commissioner's motion for
summary judgment as to that claim.  See Webb, 468 F. Supp. at 825.

## II.  Psychological Opinions

Forquer next contends that the ALJ erred by giving "little
weight" to the opinions of all four psychological evaluators, but
then failing to explain how he formulated various psychological
limitations (Dkt. No. 12 at 7-8).  The R&R concluded that the ALJ
had sufficiently explained why he discredited the psychological
opinions, and had pointed to specific evidence of record to support
his conclusion (Dkt. No. 17 at 26-30).  Forquer objected to the
R&R, arguing that the ALJ's position is clearly wrong and
inconsistent with all of the psychological opinions (Dkt. No. 18 at
1-2).  She contends the ALJ's reliance on her activities of daily
living does not compel the conclusion that she can perform
substantial gainful activity.  Id. at 2-3.  Finally, she argues
that the ALJ cannot use his own medical interpretation to make a
finding that she is not disabled.  Id. at 4.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

### A.    Applicable Law

When a claimant's psychological limitations are implicated, in addition to the five-step sequential process, the ALJ must utilize the special technique.    See 20 C.F.R. § 404.1520a(b) (2015). Pursuant to the special technique, the ALJ "must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." Id. If the claimant has a medically determinable mental impairment, the ALJ "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings . . . ." Id.

The ALJ must then "rate the degree of functional limitation resulting from the impairment(s)" and record findings. Id. The ALJ rates a claimant's degree of functional limitation as none, mild, moderate, marked, and extreme, in four areas: (1) activities of daily living;[1] (2) social functioning;[2] (3) concentration,

---

[1] Activities of daily living "include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

persistence, or pace;[3] and, (4) episodes of decompensation.[4]  20

C.F.R. § 404.1520(c)(3)-(4); 20 C.F.R. Pt. 404, Subpt. P. App. 1,

§ 12.00(C) (2015).

   If the claimant's degree of limitation in the first three

functional areas is "none" or "mild," and the degree of limitation

in the fourth area is "none," the ALJ "will generally conclude that

your impairment(s) is not severe, unless the evidence otherwise

using a post office."  20 C.F.R. Pt. 404, Subpt. P. App. 1, §
12.00(C)(1) (2015).  The ALJ assesses the quality of these
activities "by their independence, appropriateness, effectiveness,
and sustainability."  Id.

   [2] Social functioning refers to the claimant's "capacity to
interact independently, appropriately, effectively, and on a
sustained basis with other individuals."  20 C.F.R. Pt. 404,
P. App. 1, § 12.00(C)(2).  The ALJ considers a claimant's "ability
to get along with others," cooperative behaviors, consideration for
others, awareness of others' feelings, and social maturity.  Id.

   [3] Concentration, persistence, or pace "refers to the ability
to sustain focused attention and concentration sufficiently long to
permit the timely and appropriate completion of tasks commonly
found in work settings."  20 C.F.R. Pt. 404, Subpt. P. App. 1, §
12.00(C)(3).

   [4] Episodes of decompensation "are exacerbations or temporary
increases in symptoms or signs accompanied by a loss of adaptive
functioning . . . ."  20 C.F.R. Pt. 404, Subpt. P. App. 1, §
12.00(C)(4).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520(d)(1). The ALJ must "include a specific finding as to the degree of limitation in each of the functional areas . . . ." 20 C.F.R. § 404.1520(e)(4).

If the claimant's mental impairment is severe, the ALJ then must determine "if it meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 404.1520(d)(2). If the claimant's severe mental impairment neither meets nor is equivalent in severity to any listing, the ALJ then must assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520(d)(3).

**B.    The ALJ's Opinion**

The ALJ weighed the opinions of four psychological evaluators, none of whom was a treating physician.[5] These included Dr. Tony

---

[5]  A treating physician "means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502 (2015). Although the Commissioner "may consider an acceptable medical source who has treated or evaluated you only a few times . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

Goudy, Dr. Todd Mages, Dr. Ann Logan, and Dr. G. David Allen (Dkt.
No. 9-2).

Dr. Goudy, who examined Forquer on one occasion at her
attorney's request, opined that she had mild to moderate impairment
in her activities of daily living, mild to moderate impairment in
social functioning, marked impairment in concentration,
persistence, and pace, and a recent two-week hospital stay (Dkt.
No. 9-2 at 30). He concluded that Forquer met Listing 12.04 C.2
because she had "a residual disease process that resulted in such
a marginal adjustment that even a minimal increase in mental
demands or change in environment would be predicted to cause the
individual to decompensate." Id. The ALJ gave Dr. Goudy's opinion
little weight, finding that it conflicted with the evidence of
record:

> [T]he undersigned finds that the claimant has mild
> limitations in her activities of daily living, moderate
> limitations in social functioning and concentration,
> persistence and pace and has not suffered any extended
> episodes of decompensation as her hospitalization was

---

condition(s)." Id. Neither party claims that the doctors cited in
the ALJ's decision are Forquer's treating physicians.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

> only 10 days, not 2 weeks as stated by Dr. Goudy. . . .
> In addition, there is no evidence that the claimant would
> decompensate with even a minimal increase in mental
> demands or change in environment as the evidence shows
> that she is capable of living in a homeless shelter
> environment, performing community service, using public
> transportation, managing her finances, shopping in
> stores, using the internet, reading, attending church and
> maintaining a romantic relationship.

Id.

Dr. Mages, who had treated Forquer during her hospitalization in 2013, opined that she had severe limitations in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for an extended period of time, complete a normal work day and work week without interruptions from psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and appropriately respond to changes in her work setting (Dkt. No. 9-2 at 31).

He also opined that Forquer had the following moderately severe limitations:  her ability to remember locations and work procedures; her ability to understand, remember, and carry out very short, simple instructions; her ability to perform activities within a schedule; her ability to maintain regular attendance, be

14

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

punctual within normal business tolerances, and sustain an ordinary routine without special supervision; her ability to work in coordination with or proximity to others without being distracted; her ability to make simple work-related decisions; her ability to interact appropriately with the public; her ability to accept instructions and respond appropriately to supervisors' criticism; her ability to get along with co-workers and peers; her ability to maintain socially appropriate behavior and adhere to basic standards of cleanliness; her ability to be aware of normal hazards, take appropriate precautions, travel in unfamiliar places, and use public transportation; and her ability to set realistic goals or make independent plans.  Id.

Dr. Mages opined that Forquer would miss more than four days of work per month, a limitation which dated to 2008.  Id.  He concluded that she met Listings 12.02, 12.03, and 12.04, and had marked limitations in her activities of daily living, extreme limitations in maintaining social functioning and maintaining concentration, persistence, or pace, and four or more extended episodes of decompensation.  Id.  He also diagnosed Forquer with a

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

GAF score of 50, indicating a range of moderate to serious symptoms.[6] <u>Id.</u>

The ALJ gave Dr. Mages's opinion little weight, noting inconsistencies within the opinion (the GAF score reflected moderate to serious symptoms, while Dr. Mages opined that Forquer had marked and extreme limitations). <u>Id.</u> The ALJ also found Dr. Mages's opinion to be inconsistent with the evidence of record, which allegedly supports the conclusion that Forquer is less limited. <u>Id.</u>

Dr. Logan and Dr. Allen, both of whom are state agency psychological consultants, opined that Forquer had non-severe mental impairments and mild limitations in her activities of daily living, maintaining social functioning, maintaining concentration,

---

[6] GAF, or Global Assessment of Functioning, refers to "a clinician's judgment of the individual's overall level of functioning." <u>Clemins v. Astrue</u>, No. 5:13CV47, 2014 WL 4093424, at *1 (W.D. Va. Aug. 18, 2014) (quoting the Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000). A GAF score "has no direct legal or medical correlation to the severity requirements of social security regulations . . . ," but is "merely a snapshot of functioning at any given moment." <u>Id.</u> (internal citations and quotation marks omitted).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

persistence, or pace, and had no extended episodes of decompensation (Dkt. No. 9-2 at 32). The ALJ gave these opinions little weight because "the evidence of record, including the mental health records and the claimant's activities, support a finding that the claimant's mental health condition is severe." Id.

## C. Analysis

Forquer argues that the R&R improperly focused on the reasons the ALJ discounted the evaluators' opinions, and not on the fact that the ALJ's position is inconsistent with the opinions (Dkt. No. 18 at 1). Forquer contends that the ALJ erred by discounting all of the psychological opinions, and then relying on his own medical interpretation to find that Forquer was not disabled. Id. at 3-4.

An ALJ must consider medical opinions "along with the rest of the relevant evidence" in a case. 20 C.F.R. § 404.1527(b) (2015). With the exception of a treating physician's opinion,[7] the ALJ

---

[7] Although inapplicable in this case, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with the other evidence of record. 20 C.F.R. § 404.1527(c)(2) (2015); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

considers the following factors in deciding what weight to give a medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. <u>Id.</u> The ALJ's determination as to the weight to be assigned to a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." <u>Dunn v. Colvin</u>, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

Forquer has failed to cite any case law in support of her argument that the ALJ must give one of the medical opinions weight in order to support his decision. Rather, what the ALJ must consider is the evidence of record, which "may contain medical opinions." 20 C.F.R. § 404.1527(a)(2). If the evidence does include medical opinions, the ALJ must consider "the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b).

18

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

Of course, an ALJ cannot "succumb to the temptation to play doctor" and make his own medical assessment. <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990); <u>see also</u> <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053-54 (4th Cir. 1980) (holding that the ALJ may not "dispense with vocational expert testimony in favor of his own experience"). Although the ALJ may decline to give physicians' opinions controlling weight, the Court must determine whether substantial evidence supports his decision. <u>See</u> <u>Russell v. Barnhart</u>, 58 F. App'x 25, 29-30 (4th Cir. 2003) (finding that the ALJ did not supplant medical opinions with his own analysis when the ALJ relied on the claimant's testimony and statements <u>and</u> the assessments of various mental treatment sources).

Here, the ALJ crossed the line between considering the evidence of record and "playing doctor" by drawing his own medical conclusions about Forquer's mental impairments. <u>See</u> <u>Frank v. Barnhart</u>, 326 F.3d 618, 622 (5th Cir. 2003) (noting that the ALJ impermissibly drew his own medical conclusions from the data without an expert's help). With regard to Forquer's psychological impairments, the ALJ found that she suffers from bipolar disorder

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

and migraines (Dkt. No. 9-2 at 29).  He summarized the evidence of record as follows:

> Mental status examinations generally revealed appropriate
> grooming, adequate hygiene, pleasant and cooperative
> behavior, socially appropriate behavior, no involuntary
> movements, fair to good eye contact, generally normal
> psychomotor behavior, normal rate, rhythm, tone and
> volume of speech, adequate communication skills, adequate
> attention for conversation, no excessive distractibility,
> normal, linear and goal directed thought processes, an
> abstract conceptual ability, normal thought content, no
> preoccupations, no hallucinations, no illusions, no
> paranoia, no delusions, no psychosis, intact immediate
> and recent memory, an intact attention span, normal
> language, an ability to follow commands, an average fund
> of information, normal persistence, normal pace, normal
> to fair judgment, no homicidal ideations, intact to
> "mildly" deficient concentration, fair to moderately
> deficient insight, deficient remote memory, intermittent
> suicidal ideations without a plan or intent, intermittent
> tearfulness, occasionally rapid speech, euthymic,
> equivocal, depressed, angry, frustrated and sad moods and
> normal, broad, stable, "mildly" constricted and sad
> affects.

Id.

He noted that Forquer was enrolled in a two-week outpatient "partial hospitalization program" in August, 2012, for group therapy, individual therapy, medication management, and symptom improvement.  Id.  Nonetheless, in July, 2013, Forquer was hospitalized for 10 days "after being found disoriented and crying

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

in the hospital." <u>Id.</u> During her hospital stay, Forquer was diagnosed with chronic migraines with visual aura. <u>Id.</u> At discharge, a mental status examination revealed fair hygiene and grooming, a good mood, a congruent and bright affect, no suicidal or homicidal ideations, difficulty expressing herself but no formal thought disorder, spontaneous speech with normal rate, volume, and tone, fair insight, a fair "fund of knowledge," fair impulse control, and fair judgment. <u>Id.</u>

The ALJ found that, despite Forquer's bipolar disorder and migraines, she retained the ability to perform the following activities of daily life:

> perform community service, prepare meals, do chores, use public transportation, shop in stores, pay bills, count change, handle a savings account, use a checkbook or money order, read, watch television, work on puzzles, use the internet, play games online, socialize online, visit with friends, go to church weekly, live in a homeless shelter around other people and maintain a romantic relationship. . . .

<u>Id.</u> He therefore concluded that Forquer "is less limited than alleged." <u>Id.</u> According to the ALJ, Forquer's allegations "are out of proportion to and inconsistent with the evidence of record

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

. . . , which "does not support [her] alleged symptoms and
limitations." <u>Id.</u> He contends that her poor work history
"indicates a poor motivation to work and undermines the credibility
of her allegations." <u>Id.</u> at 30.

The ALJ discounted the opinions of Drs. Goudy and Mages by
relying on Forquer's activities of daily living. He gave Dr.
Goudy's opinion little weight because Forquer is capable of "living
in a homeless shelter environment, performing community service,
using public transportation, managing her finances, shopping in
stores, using the internet, reading, attending church, and
maintaining a romantic relationship." <u>Id.</u> He discounted Dr.
Mages's opinion for the same reasons, citing again to Forquer's
activities of daily living. <u>Id.</u> at 31–32. Of particular concern,
the ALJ supplanted Dr. Mages's GAF assessment of 50 or below with
his own assessment of Forquer's capabilities, based again on her
activities of daily living. <u>Id.</u> at 32.

On the other hand, the ALJ declined to rely on the opinions of
the two state psychological consultants Dr. Logan and Dr. Allen,
both of whom opined that Forquer did not suffer from a severe

22

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

impairment.  <u>Id.</u>  In a short paragraph, the ALJ simply stated that
these opinions are entitled to little weight because "the evidence
of record, including the mental health records and the claimant's
activities, support a finding that the claimant's mental health
condition is severe."  <u>Id.</u>

The ALJ's rejection of all four expert opinions begs the
question:  on what evidence did the ALJ rely?  Although he cites to
the evidence of record, he emphasizes Forquer's activities of daily
living, which allegedly support his conclusion that she is
unmotivated to work.  This is legally insufficient.  <u>See</u> <u>Dunn</u>, 607
F. App'x at 267.  The ALJ cannot merely rely on activities of daily
living — just one of the special factors — to substitute his own
opinion for that of the experts.  <u>See</u> 20 C.F.R. § 404.1520(c)(3)-
(4).  In doing so here, he has failed to sufficiently explain how
he derived his opinion.  The Court therefore **REJECTS** the R&R as to
Forquer's second claim and, pursuant to sentence four of 42 U.S.C.
§ 405(g), **REVERSES** the Commissioner's decision and **REMANDS** the
claim for further proceedings.

**III. Credibility**

23

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

Forquer argues that the ALJ erred by failing to address evidence that contradicted his opinion about her credibility (Dkt. No. 12 at 1, 9–12). According to Forquer, the ALJ opined that she quit jobs for no reason, but failed to address evidence that her behavior "fits right in" with her severe bipolar and cognitive disorders. Id. at 9–10. The R&R concluded that the ALJ's opinion was supported by substantial evidence (Dkt. No. 17 at 30–36). Forquer objected, arguing that the ALJ failed to discuss evidence that contradicts his position (Dkt. No. 18 at 5).

### A.   Applicable Law

An ALJ determines whether a person is disabled by pain or other symptoms using a two-step process. Craig, 76 F.3d at 594. First, objective medical evidence must exist showing a medical impairment resulting from anatomical, physiological, or psychological abnormalities that "could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting 20 C.F.R. § 416.929(b) (2011); 20 C.F.R. § 404.1529(b) (2011)); see also Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996) [hereinafter SSR 96-7p].

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

After the claimant makes this "threshold showing," the ALJ evaluates the credibility of the claimant's subjective symptoms. SSR 96-7p, 1996 WL 374186, at *2. The ALJ must assess the intensity, persistence, and limiting effects of the claimant's symptoms "to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Id. If the claimant's statements about the intensity, persistence, or functionally limiting effects of pain or symptoms are unsubstantiated by objective medical evidence, the ALJ must "make a finding on the credibility of those statements based on the consideration of the entire case record," including the medical signs and laboratory findings, the claimant's statements, any statements by medical professionals, and any other relevant evidence. Id.

When the ALJ needs additional information to assess the claimant's credibility, he must "make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements" and consider, in addition to objective medical evidence, the following:

25

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

1.  The individual's daily activities;
2.  The location, duration, frequency, and intensity of
    the individual's pain or other symptoms;
3.  Factors that precipitate and aggravate the
    symptoms;
4.  The type, dosage, effectiveness, and side effects
    of any medication the individual takes or has taken
    to alleviate pain or other symptoms;
5.  Treatment, other than medication, the individual
    receives or has received for relief of pain or
    other symptoms;
6.  Any measures other than treatment the individual
    uses or has used to relieve pain or other symptoms
    (e.g., lying flat on his or her back, standing for
    15 to 20 minutes every hour, or sleeping on a
    board); and
7.  Any other factors concerning the individual's
    functional limitations and restrictions due to pain
    or other symptoms.

Id. at *3.  Although the ALJ need not document specific findings as

to each factor, Wolfe v. Colvin, No. 3:14CV4, 2015 WL 401013, at *4

(N.D.W. Va. Jan. 28, 2015) (Groh, J.), his decision "must contain

specific reasons for the finding on credibility, supported by

evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the

reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

An ALJ's credibility determinations are "virtually unreviewable" by this Court. <u>Ryan v. Astrue</u>, No. 5:09CV55, 2011 WL 541125, at *3 (N.D.W. Va. Feb. 8, 2011) (Stamp, J.) (quoting <u>Darvishian v. Geren</u>, No. 08-1672, 2010 WL 5129870, at *9 (4th Cir. 2010)). Because the ALJ observed the claimant's demeanor during the administrative hearing, his determination regarding her credibility is to be given great weight. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (7th Cir. 1997) (internal citations omitted).

**B.    The ALJ's Determination**

The ALJ first determined that Forquer suffered from severe medical impairments capable of causing the alleged symptoms, including bipolar disorder, migraines, degenerative arthritis, chronic cervical and dorsolumbar strains with cervical degenerative disc disease, and disc herniation at C4-5 (Dkt. No. 9-2 at 24, 28). He then determined that Forquer's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely credible," utilizing the factors in SSR 96-7p. <u>Id.</u> at 28.

First, the ALJ considered Forquer's daily activities, noting that she has the ability to perform personal hygiene tasks, prepare

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND § 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

meals, complete chores, do laundry, perform community service, use public transportation, shop in stores, work on puzzles, and use a computer. <u>Id.</u> at 29.

Second, the ALJ considered the location, duration, frequency, and intensity of Forquer's pain. Forquer alleges that she suffers from constant back or neck pain, headaches, and confusion, and becomes overwhelmed when people talk to her. <u>Id.</u> at 28. He noted that she occasionally suffers from giveaway weakness in her upper right extremity. <u>Id.</u>

Third, the ALJ considered factors that precipitate and aggravate Forquer's symptoms, including lifting, bending, standing, walking, sitting, climbing stairs, and completing tasks. <u>Id.</u> at 28. He noted that Forquer reported that she could lift less than 10 pounds, and could not sit for prolonged periods of time. <u>Id.</u>

Fourth, the ALJ considered Forquer's pain and other medications, which include Flexeril, Mobic, Naprosyn, Volaren, Lorcet, Neurontin, Amitriptyline, a Medrol Dosepak, Prednisone, Ultrams, Elavil, Lyrica, Zyprexa, and Remeron. <u>Id.</u> at 28-29.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND § 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

Fifth, the ALJ considered Forquer's treatment (aside from medication) for pain and symptom relief. Although Forquer was referred to physical therapy, she only attended two sessions. <u>Id.</u> at 29. She received trigger point injections and cervical epidural steroid injections, but has not pursued surgical options for her spinal issues. <u>Id.</u> Forquer also enrolled in a two-week outpatient partial hospitalization program in August of 2012 for group and individual therapy, medication management, and symptom improvement. <u>Id.</u>

Finally, the ALJ considered Forquer's poor work history when assessing her credibility. <u>Id.</u> at 30. He noted that Forquer testified that she "quits jobs after a short period of time for no particular reason . . .," which "indicates a poor motivation to work and undermines the credibility of her allegations." <u>Id.</u> He also noted that Forquer reportedly performs up to 20 hours of community service per week as a condition of staying at the Clarksburg Mission, further undermining her contention that she is unable to work. <u>Id.</u>

**C.  Analysis**

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

Forquer points to several pieces of evidence that she claims the ALJ ignored when rendering his opinion that she was not credible (Dkt. No. 12 at 9-10). An adult function report from October 4, 2007, states that Forquer has always had difficulty with authority figures, and has lost more than one job because she was unable to get along with bosses and co-workers. Tr. at 333. An adult disability report explains that Forquer struggles with retaining work:

> States she cannot keep a job–she gets a job and then after a few weeks she quits. She states her mood vascillates [sic] from severe depression to mania and she cannot control her mood swings. She states she has difficulty working with young managers who try to make changes, etc. She states that if she gets yelled at or has a confrontation at work, she cannot handle it and just quits. She feels she has no control over her mood or her emotions and this prohibits her from working at this time.

Tr. at 339. In response to an inquiry from the Commissioner, Forquer explained that she had worked as a cook for less than two weeks in August, 2009, but that she quit because the stress of cooking for over 300 people was too much and she couldn't keep up. Tr. at 362, 65. On another disability report, Forquer reported

30

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

that she was unable to do her job due to stress because she has trouble concentrating and remembering her job tasks. Tr. at 378.

The ALJ need not discuss every piece of evidence in the record or document specific findings as to each factor when rendering a credibility determination. <u>Wolfe</u>, 2015 WL 401013, at *4. But he must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4.

It is not this Court's province to second-guess the ALJ's credibility determination. <u>See Ryan</u>, 2011 WL 541125, at *3. It is its job, however, to ensure that the ALJ grounded his findings on the record, and not an "intangible or intuitive notion about an individual's credibility." SSR 96-7p, 1996 WL 374186, at *4. As the R&R concluded, the ALJ clearly failed to address Forquer's contention that she is unable to keep a job because of her bipolar and cognitive disorder (Dkt. No. 17 at 35-36). The question is whether this failure requires remand.

The Court concludes that it does. The ALJ may not discuss only the evidence that favors his conclusion. <u>Diaz v. Chater</u>, 55

31

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND § 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

F.3d 300, 307 (7th Cir. 1995). In failing to discuss the evidence proffered by Forquer, which appears repeatedly within the record, the ALJ has done just that. He also glossed over several aspects of Forquer's hearing testimony.

Although not highlighted in Forquer's brief and objections, at the administrative hearing the ALJ asked Forquer why she had quit numerous jobs over the years. She testified that she had quit her telemarketing job because "[i]t was just really hard to concentrate and focus," Tr. at 49, and that she had quit her job as a cashier for the same reasons. Tr. at 50. The ALJ commented that she was "never able to stick with a job for very long," after which she elucidated that she "had a lot of problems getting along with people and remembering what [she] was supposed to be doing." <u>Id.</u> She explained that she is unable to work now, and that, although she was supposed to volunteer at the Mission for 20 hours per week, she hadn't been doing so because she was in grueling pain. Tr. at 52. Forquer testified that, at most, she volunteered for "maybe 10" hours per week. <u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

The ALJ's report concluded that Forquer "has a poor work history and testified that she quits jobs after a short period of time for no particular reason," which indicates "a poor motivation to work." (Dkt. No. 9-2 at 30).  He mentioned that Forquer performs "up to 20 hours of community service per week as a condition of staying at the Clarksburg Mission," which, by indicating some ability to work, undermines her allegations.  Id.

Based on a careful review of the evidence, the Court concludes that the ALJ's decision is not supported by substantial evidence. Although the ALJ mentioned the factors in SSR 96-7p, he failed to consider evidence that contradicted his opinion on credibility.  As a result, remand is necessary so the ALJ can assess the evidence highlighted by Forquer.  The Court therefore **REJECTS** the R&R as to Forquer's credibility claim, **REVERSES** the Commissioner's decision under sentence four of 42 U.S.C. § 405(g)and **REMANDS** the claim for further proceedings.

**IV.  Cognitive Brain Disorder**

Finally, Forquer contends that the ALJ erred by failing to account for her severe cognitive brain impairment, which was

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

supported by objective MRI evidence (Dkt. No. 12 at 13–16). The R&R concluded that, even if the ALJ's analysis was lacking, substantial evidence supported his decision that Forquer's cognitive brain disorder is not a severe impairment (Dkt. No. 17 at 41). Forquer objected, contending that the ALJ appears to have relied on evidence from physicians to whose opinions he previously gave little weight (Dkt. No. 18 at 6). She argues that the R&R relied on her activities of daily living to bolster the ALJ's position, even though the ALJ did not cite any of those activities as a rationale for his decision. <u>Id.</u> at 6–7. Finally, she contends that both the ALJ and the magistrate judge incorrectly conflated Steps 2 and 3 of the five-step analysis. <u>Id.</u> at 7.

### A.   Applicable Law

At Step Two, the claimant bears the burden of establishing that she suffers from a severe, medically determinable physical or mental impairment that either is expected to result in death or has lasted or is expected to last at least 12 months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509 (2015); <u>Grant v. Schweiker</u>, 699 F.2d 189, 191 (4th Cir. 1983). A "severe"

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

impairment is one that significantly limits the claimant's physical or mental abilities to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In the Fourth Circuit, an impairment can be considered "not severe" "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984).

An impairment must result from abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1508 (2015).  Mere diagnosis of a condition is insufficient to prove disability; rather, the claimant must show related functional loss.  <u>See</u> <u>Gross v. Heckler</u>, 785 F.2d 1163, 1165 (4th Cir. 1986).

As previously explained, when the claimant alleges a mental impairment, the ALJ must follow the special technique, applying the paragraph B criteria.  <u>See</u> 20 C.F.R. § 404.1520a(b); 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(c)(1–4).  These include activities

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND § 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation.

**B.   The ALJ's Decision**

At Step Two, the ALJ recognized that Forquer's record included a diagnosis of cognitive brain disorder and psychosis during her July, 2013, hospital stay (Dkt. No. 9-2 at 24).  He decided that these diagnoses were not severe impairments, however, stating as follows:

> [T]he undersigned rejects theses diagnoses as they are not consistent with the longitudinal medical evidence of record that shows the claimant was alert and oriented, a generally intact memory, normal language, a normal fund of information, normal thought processes, normal thought content without preoccupations, no hallucinations, no illusions, no paranoia and no delusions (Exhibit 17F/5, 19F/5, 20F/6, 24 F/11, 25 F/9, 26F, 32 F/8, 9, 10, 17, 24, 29, 35, 42, 48, 54, 60, 63, 69, 76, 82, 88, 94, 97, 98, 99).  Even at the time of hospitalization the claimant did not report hallucinations, only her significant other reported them (Exhibit 33F/15).  In addition, at discharge the claimant did not demonstrate any psychotic symptoms and showed fair insight, fair impulse control, fair judgment and a fair fund of knowledge (Exhibit 33F/2).  Furthermore, full scale IQ testing revealed a score of 77, indicating borderline intellectual functioning, but her verbal IQ score was 98 and her performance on WRAT-4 testing was significantly higher calling into question the validity of the full scale IQ test results (Exhibit 26F).  Therefore, the

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

> undersigned rejects the diagnoses of cognitive brain
> disorder and psychosis.

Id. at 24–25.  In the Step 3 section of his report, the ALJ went

through the special technique, explaining that the Paragraph B

factors "are not a residual functional capacity assessment but are

used to rate the severity of mental impairments at steps 2 and 3 of

the sequential evaluation process." Id. at 27.  The ALJ considered

Forquer's mental impairments, singly and in combination, as

follows:

> In activities of daily living, the claimant has mild
> restriction.   She is independent in personal care
> activities and is able to prepare meals, clean, do
> laundry, perform community service, use public
> transportation, shop in stores for groceries and personal
> items, pay bills, count change, handle a savings account,
> use a checkbook or money order, read for pleasure, use
> the internet, play games online, watch television and
> attend church weekly (Hearing Testimony, Exhibit 18E,
> 243, 26F, 33F/39, 40).  Thus, the evidence shows that the
> claimant has mild restriction in her activities of daily
> living.
>
> In social functioning, the claimant has moderate
> difficulties.   She reported difficulties with
> understanding and getting along with people and isolating
> herself when she becomes angry.  However, she lives in a
> homeless shelter and is able to get along with the other
> residents, spends time with people in the dining room and
> reported being able to get along with friends, family,

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

neighbors and authority figures. She is also able to use public transportation, shop in stores, go to church weekly, socialize online by chatting with friends and using Facebook, and maintain a romantic relationship (Hearing Testimony, Exhibit 18E, 24E, 26F, 32F/33, 33F/39, 41). In addition, mental status examinations revealed pleasant and cooperative behavior, adequate communication skills and fair to good eye contact (Exhibit 26F, 32F/9, 17, 24, 29, 35, 42, 48, 54, 60, 63, 69, 76, 82, 88, 94, 97, 98, 99). Thus, the evidence shows that the claimant has moderate limitations in social functioning.

With regard to concentration, persistence, or pace, the claimant has moderate difficulties. She reported difficulties with remembering, confusion, understanding and completing tasks. However, she is able to perform community service, prepare meals, perform chores, do laundry, use public transportation, shop in stores for food and personal items, attend church, read, use the internet, play online games, pay bills, count change, handle a savings account, use a checkbook or money order, work on puzzles and watch television (Hearing Testimony, Exhibit 18E, 24E, 36F, 33F/39). Thus, the evidence of record shows that the claimant had moderate difficulties with concentration, persistence or pace.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. The claimant was hospitalized for 10 days in July of 2013 (Exhibit 33F/1). However, this hospitalization was not of extended duration.

Id. at 26.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

The ALJ's only mention of Forquer's MRI occurs in his Steps 4 and 5 analysis, where he finds that Forquer has the residual functional capacity to perform light work, with certain limitations. <u>Id.</u> at 27. There, he notes that Forquer's MRI "revealed nonspecific white matter signal changes and an electroencephalogram was normal (Exhibit 33F/5, 8)." <u>Id.</u> at 29.

### C.  Analysis

Forquer highlights objective evidence establishing that she suffers from white matter changes in her brain that cause a cognitive impairment (Dkt. No. 12 at 13). She argues that Dr. Mages found her to have cognitive impairments that cause "marked problems with social functioning and concentration, pace, and persistence. <u>Id.</u> at 14 (citing Tr. at 994–97). She also points to a February 13, 2012, Social Security Administration Psychological Evaluation by Dr. Marvin Levin, which indicated that she has severe remote memory problems, difficulty handling finances, processing speed difficulties, confusion, and psychosis. <u>Id.</u> (citing Tr. at

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

820–24). Forquer further references Dr. Mages's discharge summary, which notes that white matter changes in her brain could be causing memory loss. Id. (citing Tr. at 950–51). Finally, she contends that Dr. Goudy noted marked memory problems. Id. (citing Tr. at 1016).

As an initial matter, the ALJ did consider the exhibits highlighted by Forquer. The ALJ discussed Dr. Levin's examination, which Forquer cites for the proposition that she becomes confused easily and has memory problems, before explaining that her test results were inconsistent and therefore not reliable (Dkt. No. 9-2 at 25). The ALJ also considered Dr. Mages's discharge report, noting that an MRI shows white matter changes.[8] Id. at 29.

In her objections, Forquer transforms her argument that the ALJ failed to consider the objective medical evidence (Dkt. No. 12

---

[8] Interestingly enough, part of the discharge summary not cited by Forquer supports the ALJ's decision. It reads, in relevant part, that Forquer's "MRI did show periventricular white matter changes. Neurology was consulted, but felt that this was not contributory to her presenting symptoms; however, did think that with the small white ischemic changes, as well as history of multiple head injuries, that perhaps this is causing her current memory loss and difficulty with change." Tr. at 951.

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

at 13–14), into one that the ALJ improperly relied on the opinions of physicians to which he accorded little weight (Dkt. No. 18 at 6). Both arguments are unavailing. As mentioned earlier, the ALJ did consider the objective medical evidence cited by Forquer. Also, a distinction exists between the opinions of Dr. Mages and Dr. Goudy (to which the ALJ accorded little weight) and the <u>results</u> of the objective medical tests they performed (which the ALJ appeared to consider). This is not a distinction without a difference; the ALJ appears to have considered the medical tests performed by Dr. Mages before discrediting his opinion on the special factors, finding that it was unsupported by the medical evidence (Dkt. No. 9-2 at 29, 31). Nor is this ruling inconsistent with the Court's earlier finding that substantial evidence did not support the ALJ's decision to discredit all <u>four</u> experts' opinions, making it unclear on which opinion he relied.

Forquer's second objection, that the magistrate judge erred by citing to her activities of daily living, is also unavailing (Dkt. No. 18 at 6–7). As previously mentioned, the ALJ referenced Forquer's activities of daily living during his analysis of the

41

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

Paragraph B criteria (Dkt. No. 9-2 at 26). He applied those criteria to Steps 2 and 3. <u>Id.</u> at 27. It was therefore proper for the magistrate judge to use the activities of daily living when considering whether any error was harmless.

Finally, Forquer contends that the ALJ and the magistrate judge conflated the Steps 2 and 3 analysis (Dkt. No. 18 at 7). The way the ALJ structured his decision is confusing; Steps 2 and 3 are set forth in different sections, but the analysis that applies to both steps only appears under the Step 3 heading. Nonetheless, any error in this respect is harmless because it is clear that it "was inconsequential to the ultimate nondisability determination." <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

Forquer contends that the ALJ's error was not harmless because acceptance of the medical evidence of white matter changes could bolster her credibility. Perhaps it could. The Court's role, however, is merely to determine whether the ALJ's decision is supported by substantial evidence, not to decide which interpretation of the medical evidence is more persuasive. <u>See</u> <u>Mayer</u>, 662 F.3d at 704; <u>Mutual Mining, Inc.</u> 80 F.3d at 113. Here,

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

---

the ALJ's decision that Forquer's cognitive brain disorder was not severe is supported by substantial evidence. The Court therefore **ADOPTS** the recommendation of the magistrate judge as to Forquer's cognitive brain disorder claim and **GRANTS** the Commissioner's motion for summary judgment as to that claim.

## CONCLUSION

After careful consideration of the parties' arguments and for the reasons discussed, pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3), the Court **ADOPTS IN PART AND REJECTS IN PART** the R&R (Dkt. No. 17), **REVERSES** the Commissioner's decision, and **REMANDS** this case to the Commissioner for further proceedings in accord with this Memorandum Opinion and Order. Specifically, the Court

1. **OVERRULES** Forquer's objections as to the reopening and cognitive brain disorder claims (Dkt. No. 18);

2. **GRANTS IN PART** the Commissioner's motion for summary judgment regarding her cognitive brain disorder and reopening claims;

43

**MEMORANDUM OPINION AND ORDER ADOPTING IN PART AND
REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION [DKT. NO. 17], REVERSING THE COMMISSIONER'S
DECISION UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g) AND
§ 1383(c)(3), AND REMANDING THE CASE TO THE COMMISSIONER**

3.    **SUSTAINS** Forquer's objections to the R&R's findings as to her psychological opinion and credibility claims;

4.    **GRANTS IN PART** Forquer's motion for summary judgment by **REVERSING** the Commissioner's decision under sentence four of 42 U.S.C. 405(g); and

5.    **REMANDS** Forquer's psychological opinion and credibility claims to the Commissioner for further proceedings in accord with this Memorandum Opinion and Order.

The Court further **DIRECTS** that this case be **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk of Court to transmit copies of this Memorandum Opinion and Order to counsel of record, and to enter a separate judgment order.

DATED:  August 11, 2016.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE